**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION**

**VINCENT SCOTT SHEPHARD,**

**Plaintiff,**

**vs.** **Case No. 5:25-cv-200-MAF**

**FRANK BISIGNANO,**
**Commissioner of Social Security,**

**Defendant.**
**_________________________/**

## MEMORANDUM OPINION AND ORDER

This Social Security case was referred to the undersigned upon consent of the parties by United States District Judge T. Kent Wetherell, II. ECF Nos. 5, 6. This cause is before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for Period of Disability and Disability Insurance Benefits (DIB). After consideration of the record, for the reasons stated below, the decision of the Commissioner is REVERSED AND REMANDED.

## I. Procedural History

On May 27, 2022, Plaintiff protectively filed an application for a period of disability and DIB, alleging disability beginning on June 1, 2016, see Tr. 19, 216–17,[1] but later amended this date to November 1, 2017. See Tr. 933-35. The Commissioner denied the claim initially and on reconsideration. Tr. 119, 126. On July 27, 2022, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). See Tr. 135, 1366–37. On November 9, 2022, ALJ Andrew Dixon III conducted a telephonic hearing,[2] Tr. 36–65, and on December 13, 2022, issued a decision finding Plaintiff not disabled. Tr. 19–31. On February 23, 2023, the Appeals Council denied Plaintiff's request for review. Tr. 1–3.

On April 3, 2023, Plaintiff filed a civil action appealing the final decision of the Commissioner. Shepherd v. O'Malley, No. 5:23-cv-00094-TKW-MAF, (N.D. Fla. Apr. 3, 2023). On June 18, 2024, this Court reversed and remanded the case. Id., 2024 WL 3049586, at *9 (N.D. Fla. May 30, 2024), R.&R. adopted, 2024 WL 3046209 (N.D. Fla. June 18, 2024); Tr. 999–1043. The Appeals Council vacated the Commissioner's decision and remanded

[1] References to the record in this case will be to "Tr." followed by the relevant page number.

[2] With Plaintiff's consent, the hearing was held telephonically because of the COVID-19 pandemic. Tr. 153–56, 272–73.

the case to an ALJ. Tr. 1048. ALJ Dixon conducted a hearing on February 18, 2025. Tr. 929–71. Plaintiff was represented by attorney Thomas Furr and testified at the hearing. Tr. 931, 936–63. John Black, a vocational expert (VE) also testified. Tr. 964–69. On June 6, 2025, ALJ Dixon issued a decision finding Plaintiff not disabled. Tr. 882–98. The ALJ's decision became the final decision of the Commissioner after remand. 20 C.F.R. § 404.984(d). Accordingly, the Commissioner's final decision is ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

On August 7, 2025, Plaintiff filed this action with the Court. ECF No. 1. The Commissioner filed the administrative record on November 18, 2025. ECF No. 12. Plaintiff filed a Memorandum in Support of his Complaint on December 18, 2025. ECF No. 14. The Commissioner filed a responsive memorandum in support of the Commissioner's position on March 12, 2026. ECF No. 19.

## II. Issues Presented

In his Complaint and Memorandum in Support, Plaintiff raises the following issues:

1. Whether the light jobs identified by the VE are inconsistent with ALJ Dixon's RFC assessment and hypothetical question.

2. Whether the ALJ failed to properly consider and discuss medical records concerning Plaintiff's migraines and the impact of migraines on Plaintiff's RFC.

3. Whether the ALJ failed to consider Plaintiff's right shoulder impairments and tinnitus, and to explain the impacts of these impairments on Plaintiff's ability to work.

4. Whether the VE's testimony constituted substantial evidence to support the ALJ's decision that Plaintiff could perform the jobs of Router and Office Helper.

ECF No. 14 at 1–2. As these are the only issues presented, the Court will limit its review of ALJ's decision and record to these matters.

## A. Legal Standards Guiding Judicial Review

Review of the Commissioner's decision is limited. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1986). Affirmance is required if the decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, 703 F.2d at 1239; accord Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir.

2011), cited in Rovegno v. Comm'r of Soc. Sec., No. 25-11393, 2026 WL 493930, at *2 (11th Cir. Feb. 23, 2026).[3]

The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the entire record, consider evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings. Lowery v. Sullivan,

[3] The Court "will affirm the Commissioner's decision if it is supported by substantial evidence, even if the preponderance of the evidence weighs against it. Buckwalter v. Acting Comm'r of Soc. Sec., 5 F.4th 1315, 1320 (11th Cir. 2021). It is true that an ALJ must consider the evidence as a whole. Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1267 (11th Cir. 2015). But we do not require an ALJ's decision to cite every piece of evidence in the record. See Buckwalter, 5 F.4th at 1326. Here, ALJ Dixon "discussed and cited many parts of the record and stated that he considered the entire record. This satisfied the ALJ's duty to consider the evidence. See Rovegno v. Comm'r of Soc. Sec., No. 25-11393, 2026 WL 493930, at *2 (11th Cir. Feb. 23, 2026).

A "substantial evidence" standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record that support the ALJ.

> Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's "duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."

Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (quoting Stawls v. Califano, 596 F.2d 1209, 1213 (4th Cir. 1979)). An ALJ may not focus on one aspect of the evidence and ignore other parts of the record. Smith v. Comm'r of Soc. Sec., No. 23-10157, 2024 WL 963725, at *3 (11th Cir. Mar. 6, 2024) (citing McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986)).

979 F.2d 835, 837 (11th Cir. 1992). Review is deferential, but the reviewing court conducts “an independent review of the record.” Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, “but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.” 42 U.S.C. § 423(d)(2)(A). It is an “inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.” Id. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement); Barnhart v. Walton, 535 U.S. 212, 223–24 (2002).

The Commissioner analyzes a claim in five steps pursuant to 20 C.F.R. § 404.1520(a)(4)(i)–(v):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the residual functional capacity ("RFC") to perform work despite limitations and are there any impairments which prevent past relevant work?[4]

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not

[4] An RFC is the most a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of his limitations, observations by treating and examining physicians or other persons, and medical records. Id*.* The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); see Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term '*residual functional capacity assessment'* describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."). The Court will apply SSRs in effect when the ALJ rendered his decision. See generally, Bagliere v. Colvin, No. 1:16CV109, 2017 WL 318834, at *4 (M.D.N.C. Jan. 23, 2017), adopted 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

disabled. If the claimant satisfies this burden of demonstrating he cannot do prior work, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (e), (g)). If the Commissioner carries this burden, the claimant must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that he is disabled, and consequently, is responsible for producing evidence in support of his claim. See 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211. As the finder of fact, pursuant to 20 C.F.R. §§ 404.1502(a) and 404.1513(a)(2), the ALJ considers medical opinions from licensed physicians and psychologists and acceptable medical sources. The ALJ is charged with the duty to evaluate all the medical opinions of record and resolve conflicts that might appear. Id. § 404.1527.

Pursuant to the revised regulations applicable to claims filed on or after March 27, 2017, an ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017). The removal of the treating source

rule is intended to "eliminate confusion about a hierarchy of medical sources and instead focus adjudication" on the evidence, as well as ensure that courts are not reweighing the evidence under the substantial evidence standard of review, which is intended to be a highly deferential standard. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017). The Eleventh Circuit has recognized that the "new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion." Matos v. Comm'r of Soc. Sec., No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022).

The ALJ must now determine the persuasiveness of medical opinions by considering supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 416.920c(c)(1)–(5) (2017). Because supportability and consistency are the "most important" factors, the ALJ must articulate how these factors were considered for a medical source's opinions or prior administrative medical findings, but an ALJ is not required to articulate how the remaining factors were considered unless there are equally persuasive medical opinions or prior administrative medical findings as explained in 20 C.F.R. § 416.920c(b)(2)–(3). The ALJ will

consider one or more medical opinions or prior administrative medical findings from the same medical source together using the above factors; and the ALJ is not required to articulate how he or she considered each opinion or finding. Id. § 416.920c(b)(1) (2017).

Social Security regulations do not require the ALJ to use any "magic language" or follow a particular formula when addressing the supportability and consistency factors. See id. § 416.920c(b)(2); Thaxton v. Kijakazi, No. 1:20-cv-00616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022) ("[T]he ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record.") (internal citations omitted). Accordingly, the ALJ does not need to address the supportability and consistency factors through separate analyses if the analysis addresses the substance of both factors. See Alvarez v. Comm'r of Soc. Sec., No. 20-cv-24711-Bloom/Otazo-Reyes, 2022 WL 2092886, at *2 (S.D. Fla. June 10, 2022) (finding that the ALJ's simultaneous consideration of supportability and consistency factors was not improper) (citing, inter alia, Thaxton, 2022 WL 983156, at *8); Rivera v. Kijakazi, No. 6:21-cv-93-AAS, 2022 WL 2965883, at *4 (M.D. Fla. July 27, 2022) ("The articulation requirement is met so long as the evaluation addresses the substance of the

factors, regardless of the specific language used in the evaluation.") (citing Cook v. Comm'r of Soc. Sec., No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *5 (M.D. Fla. Apr. 6, 2021)).

When a vocational expert (VE) is utilized at the fifth step in the sequential evaluation process, the hypothetical questions posed must include all impairments of the particular claimant/plaintiff. Pendley v. Heckler, 767 F.2d 1561, 1562 (11th Cir.1985). Therefore, this Court must determine whether the ALJ failed to include any limitations resulting from Plaintiff's severe impairments in the hypothetical question that formed the basis of the VE's testimony, and if so, whether such failure constitutes grounds for reversal. "Hypothetical questions adequately account for a claimant's limitations . . . when the questions *otherwise implicitly account* for them." Forrester v. Comm'r of Soc. Sec., 455 F. App'x 899, 903 (11th Cir. 2012) (emphasis added). The Court may affirm the ALJ's opinion when "the ALJ's hypothetical to the VE properly comprised, expressly or by implication, all of [the Plaintiff's] impairments, and the VE's answer constituted substantial evidence that [the Plaintiff] could perform work in the national economy." Id. If the ALJ "asked the vocational expert a hypothetical question that failed to include or otherwise implicitly account for all of [the Plaintiff's] impairments,

the vocational expert's testimony," would not be substantial evidence for a disability determination. Winschel, 631 F.3d at 1181 (11th Cir. 2011).

## III. ALJ Dixon's Findings

ALJ Dixon properly articulates and follows the five-step sequential evaluation process for determining disability. See id. § 416.1520(a). In doing so, ALJ Dixon made the following findings (in bold):

**1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2018.**

This finding is undisputed.

**2. The claimant did not engage in substantial gainful activity during the period from his amended alleged onset date of November 1, 2017, through the date last insured of December 31, 2018 (20 CFR 404.1571 *et seq.*).**

This finding is undisputed.

**3. Through the date last insured, the claimant had the following severe impairments: anxiety disorder, post-traumatic stress disorder (PTSD), tinnitus, ankle degenerative joint disease, bilateral knee degenerative joint disease, lumbar spine degenerative disc disease, and migraines (20 CFR 404.1520(c)).**

This finding is undisputed. Plaintiff has medically determinable impairments that have more than a minimal impact on his ability to perform basic work activities as required by SSR 85-28.

**4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part**

**404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

This finding is disputed.

ALJ Dixon confirmed that Plaintiff's physical impairments, while severe, do not meet or medically equal a listed impairment. ALJ Dixon first considered Listings 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root(s)), and 1.18 (Abnormality of a major joint(s) in any extremity). T. 885–86. ALJ Dixon determined that the evidence did not demonstrate the level of limitation to meet or medically equal either of these listing. Tr. 885–86. Additionally, without a listing for headaches, ALJ Dixon considered whether Plaintiff's headaches medically equal Listing 11.02 (Discognitive seizures), the listing most analogous to headaches, and concluded that the effects of headaches are not of the severity that invokes Listing 11.02. Tr. 886.

ALJ Dixon also concluded that Plaintiff's mental impairments, both singly and in combination, do not meet or medically equal the criteria of listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders). Tr. 886. Ultimately, ALJ Dixon concluded that Plaintiff's mental

health conditions resulted in no more than a “moderate” limitation. Tr. 886–88.

Plaintiff reported limited understanding, remembering, or applying information and testified at the hearing that he cannot remember what he did the day before, and he does not manage finances. Tr. 886, 958-59. ALJ Dixon determined that, in the areas of understanding, remembering, or applying information, Plaintiff had no more than moderate limitation. Tr. 886. ALJ Dixon further concluded that Plaintiff had severe medically determinable mental impairments of anxiety disorder and PTSD. Tr. 886–87. The ALJ discussed Plaintiff’s mental health examinations indicated Plaintiff’s thought process was logical, linear, and goal oriented, and Plaintiff’s cognition was intact. Tr. 887. Additionally, state agency medical consultants Dorothy Holmes, Ph.D., and George Grubbs, Psy.D., opined that Plaintiff has no to mild limitation in understanding, remembering, or applying information. Tr. 887, 894.

Plaintiff reported limitation in getting along with others. Tr. 959. At the hearing, the Plaintiff testified his pain, sleep disruption, and medication side effects make it difficult for him to focus and concentrate. Tr. 956–57. Notes from mental status examinations indicate Plaintiff was cooperative; his eye contact was fair to good; speech was spontaneous and normal in volume

and rate; he described his mood as ok/good/better with instances of depression; affect was mostly euthymic with some dysthymia and blunting; and his insight and judgment were fair to good. Tr. 887; 422–23, 424–31, 433–47, 432–49, 459–60, 468–76, 481–96, 499–504, 652–53, 668–69, 672–79, 688–92, 696–712. State agency medical consultants opined that Plaintiff had mild limitation interacting with others. Tr. 887; 100–04. Based on this evidence, ALJ Dixon found that Plaintiff has no more than moderate limitation interacting with others. Tr. 887.

Plaintiff claims limitation in the areas of concentrating, completing tasks, and following instructions. ALJ Dixon referenced Plaintiff's testimony that Plaintiff has difficulty maintaining relationships due to irritability, and his PTSD manifests as intrusive thoughts, flashbacks, nightmares, hypervigilance, and recurrent memories. Tr. 887, 958–620. However, at mental status examinations, his thought process was logical, linear, and goal directed; he denied suicidal/homicidal ideation, hallucinations, or delusions; and his cognition was intact. Tr. 886–88. State agency medical consultants opined that the claimant had mild limitation concentrating, persisting, or maintaining pace. Tr. 887, 101, 109. ALJ Dixon determined that Plaintiff had no more than moderate limitation in these areas. Tr. 888. As for adapting or

managing oneself, Plaintiff testified that he experiences sleep disruption, sleeping three to four hours a night. Tr. 888, 954–55, 959.

Plaintiff complains that the combination of his medications causes negative side effects such as blurred vision, dizziness, sleeplessness, tiredness, diarrhea, and weight that make it difficult for him to focus and concentrate. Tr. 888, 955. Notes from mental status examinations indicate Plaintiff’s grooming was fair. He did not display psychomotor agitation or retardation evident with one instance of retardation, nor were stereotypic tics, gestures, or movements noted. His symptoms were well controlled with medication. Tr. 888. State agency medical consultants found that Plaintiff had no to mild limitation understanding, remembering, or applying information; mild limitation interacting with others; mild limitation concentrating, persisting, or maintaining pace; and mild limitation adapting or managing himself. Tr. 888. However, ALJ Dixon found that Plaintiff has no more than moderate limitation adapting or managing himself. Tr. 889.

Because Plaintiff’s mental impairments did not cause at least two “marked” limitations or one “extreme” limitation, ALJ Dixon determined “paragraph B” criteria were not satisfied. Tr. 888. ALJ Dixon further determined that the evidence did not establish “paragraph C” criteria because the record does not establish that Plaintiff has only marginal

adjustment, which is a minimal capacity to adapt to changes in Plaintiff's environment or to demands that are not already part of his daily life. Tr. 888. ALJ Dixon noted that "no state agency psychological consultant concluded that a mental listing is medically equaled." Tr. 888.

**5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can lift, carry, push, and pull ten pounds frequently and no more than 20 pounds occasionally. He cannot climb ladders or scaffolds but can occasionally climb stairs and frequently climb ramps. He can frequently balance but can occasionally kneel, crouch, crawl, or stoop. He can occasionally reach overhead but can frequently reach in other directions and can otherwise frequently handle, finger, and feel. He can tolerate up to occasional exposure to hazards, such as unprotected heights, heavy machinery, environments of excessive noise, excessive brightness, as well as fumes. He can sit for six to eight hours in an eight-hour workday but can stand for no more than four hours in an eight-hour workday or walk for more than four hours in an eight-hour workday. He requires the option to sit or stand at will to be made available. He is limited to understanding, remembering, and carrying out simple instructions and performing simple tasks due to concentration deficits, defined as the ability to apply common sense understanding to carry out uninvolved written or oral instructions and deal with problems involving few concrete variables in and from standardized situations. He can interact with coworkers but only through occasional conversations and interpersonal interactions. He should be able to accept instructions and respond appropriately to supervisors on a frequent basis. He should interact with the public on a less than an occasional basis. He should not engage complex decision-making and should be exposed to no more than occasional changes in the work setting or work environment.**

This finding is disputed.

ALJ Dixon stated that he considered all of Plaintiff's symptoms and the extent to which those symptoms are consistent with the objective medical and other evidence, as well as the medical opinions and prior administrative findings, in accordance with and based on the requirements of 20 C.F.R. § 416.929, SSR16-3p, and 20 C.F.R. § 416.920c. Tr. 889. In doing so, ALJ Dixon followed a two-step process: (1) determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the Plaintiff's symptoms; and (2) evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they would limit Plaintiff's work-related activities. Tr. 889. ALJ Dixon concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, he also concluded that Plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical and other evidence of record. Tr. 889.

In 2016, the claimant completed a Function Report – Adult form, reporting limitations in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing, hearing, remembering, concentrating, completing tasks, understanding, following instructions, and getting along with others. He was not limited in talking, seeing, or using his hands. Tr. 889–90, 234–

41. Plaintiff also indicated he wore hearing aids. At the initial and reconsideration levels, Plaintiff alleged impairment due to severe back problems, high blood pressure, sleep apnea, PTSD, mood swings, and depression. Tr. 890, 244.

In June 2022, Plaintiff reported that his mental health was controlled with medication, and he had no mental admissions or incarcerations. Tr. 889, 261. At the time he did not drive and only went to stores for quick trips. Plaintiff used a cane that he purchased on his own and used a continuous positive airway pressure (CPAP) machine. Tr. 889, 261. He had chest pain and saw his primary care physician a few times. Tr. 889, 261. Plaintiff's wife performed all household chores and assisted Plaintiff with activities of daily living, including occasionally helping him with bathing, dressing, and grooming. Tr. 889, 261.

ALJ Dixon summarized Plaintiff's testimony at the hearing. Tr. 890. Plaintiff claimed he could not work since November 2017 because he missed too many days due to his symptoms. Tr. 941–42. According to Plaintiff, if he stands more than five to ten minutes, he must sit to catch his breath. Plaintiff testified that he suffers debilitating migraine headaches with blurred vision, photophobia, phonophobia, and nausea. Tr. 942. On average, he has two to three migraines per week, with each migraine lasting four to five hours. Tr.

943. He takes a preventative medication and a different medication at onset. Tr. 946–47. When a migraine occurs, he must stop everything, go to a dark and quiet place, and use a cold compress. Tr. 943, 962–63.

Plaintiff testified that he is right-handed and has right shoulder problems. Tr. 948. When sitting at a desk in an office chair, he experiences pain when reaching out to type, use a calculator, or write. Tr. 949–50. He can sit and reach out with his hands to type on a keyboard for five minutes before stopping and taking a 30-minute break. Tr. 950. He can brush his teeth with his right hand for a few seconds. He cannot pick up his grandson or throw a ball. He used to play the drums. Tr. 950–51. Plaintiff suffered from back pain "all the time" and wears a back brace every day. Tr. 951. He has lower back pain and cannot bend over stooping at the knees. He has lower back pain when not bending. Tr. 951. His back pain constantly radiates into his legs bilaterally and worsens with prolonged walking or sitting. Tr. 952. Plaintiff testified he can sit for five minutes, stand for ten to fifteen minutes, walk twenty to fifty yards, and can lift and carry ten pounds. Tr. 953–54. Plaintiff estimated his physical pain at eight to nine out of ten on average day. Tr. 955. Plaintiff has ringing in his ears. He experiences sleep disruption and only sleeps three to four hours a night. In combination, Plaintiff's medications cause negative side effects that affect his ability to work, such

as blurred vision, dizziness, sleeplessness, tiredness, diarrhea, and weight loss. Tr. 955. His pain, sleep disruption, and medication side effects make it difficult for him to focus and concentrate. Tr. 956–57. He cannot remember what he did the day before and does not manage the finances. Plaintiff testified he has difficulty maintaining relationships due to irritability. He has PTSD with intrusive thoughts, flashbacks, nightmares, hypervigilance, and recurrent memories from his service in the Army. Tr. 958–61. He sees a doctor two to three times a month. Tr. 890.

ALJ Dixon meticulously reviewed VA records and acknowledged they reflect a 100 percent service connected/rated disability rating. Tr. 891–95, 848. Beginning June 1, 2004, he had a service connected/rated disability rating of ten percent due to tinnitus. Tr. 851. Beginning November 6, 2015, he had a service connected/rated disability rating of 40 percent due to lumbar spondylosis and degenerative disc disease. Tr. 852. Beginning March 31, 2016, he had a service connected/rated disability rating of seventy percent for PTSD and major depressive disorder with anxiety and sleep disturbance, thirty percent for tension headaches claimed as migraines, twenty percent due to right knee strain, twenty percent due to left knee strain, ten percent due to right lower extremity radiculopathy, ten percent due to right knee strain

(instability), ten percent due to recurrent right ankle sprain, and ten percent due to left ankle sprain. Tr. 850–52.

In his decision, ALJ Dixon specifically referenced all the interactions with health care providers at the VA from January 2017 through November 2018. Tr. 891–94. Plaintiff does not challenge most of this analysis, so repeating it here would add little to the discussion. With respect to Plaintiff's mental health care, VA records indicate he suffered from depression, anxiety, and PTSD, which were well-controlled with medication and cognitive behavioral therapy. Tr. 891–94, 338, 526, 563, 572, 599. VA records from 2018 showed significant improvement in mood, energy level, sleep, and anxiety. Tr. 893, 500, 526.

As for opinion evidence, ALJ Dixon considered the opinions of state agency medical consultants Dorothy Holmes, Ph.D., and George Grubbs, Psy.D. Tr. 894. At the initial level, Dr. Holmes opined Plaintiff had mild limitation understanding, remembering, or applying information; mild limitation interacting with others; and mild limitation concentrating, persisting, or maintaining pace; and mild limitation adapting or managing himself. Tr. 894, 101–02. At the reconsideration level, Dr. Grubbs opined Plaintiff had no limitation understanding, remembering, or applying information; mild limitation interacting with others; mild limitation concentrating, persisting, or

maintaining pace; and mild limitation adapting or managing himself. Tr. 894, 108–09. ALJ Dixon found these opinions somewhat persuasive. While ALJ Dixon agreed with their conclusions that Plaintiff was not disabled, ALJ Dixon determined that Plaintiff's disability rating, mental status examinations, and hearing testimony, are consistent with moderate mental limitations as set forth in his RFC. Tr. 894–95.

ALJ Dixon also considered Plaintiff's VA service-connected disability rating of 100 percent and found it unpersuasive. A disability decision by any other agency is not the decision of the Commissioner, who must make a determination of disability based on Social Security law. Tr. 895; 20 C.F.R. § 404.1504.

ALJ Dixon states that he considered objective medical evidence, Plaintiff's subjective complaints, and treatments required for his conditions. Tr. 895. ALJ Dixon believed Plaintiff could perform positions subject to the articulated RFC. Tr. 895.

**6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).**

This finding is not in dispute.

**7. The claimant was born on September 25, 1965, and was 53 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 416.1563).**

This finding is not in dispute.

**8. The claimant has at least a high school education (20 CFR 416.1564).**

This finding is not in dispute.

**9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

This finding is not in dispute.

**10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could have performed (20 CFR 416.1569 and 416.1569a).**

This finding is disputed.

Because ALJ Dixon found Plaintiff had limitations that eroded Plaintiff's ability to work, he asked the VE whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. The VE testified that given all these factors, the individual would still be able to perform the requirements of the following representative occupations:

| Job Title | DOT # | Skill, Exertion | # of Jobs in the National Economy |
|---|---|---|---|
| Routing Clerk | 222.687-022 | SVP 2, unskilled light | 105,000 |
| Office Helper | 239.567-010 | SVP 2, unskilled light | 14,000 |
| Router | 222.587-038 | SVP 2, unskilled light | 35,000 |

ALJ Dixon determined that the VE's testimony is consistent with SSR 24-3p. Tr. 897.

ALJ Dixon concluded, based on the testimony of the VE and considering Plaintiff's age, education, work experience, RFC, and limitations, Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Tr. 897. ALJ Dixon therefore determined that a finding of "not disabled" is appropriate under the framework of the SSR 24-3p. Tr. 898.

**11. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 1, 2017, the amended alleged onset date, through December 31, 2018, the date last insured (20 CFR 416.1520(g)).**

This finding is disputed.

ALJ Dixon concluded that, based on the application for a Period of Disability and DIB benefits protectively filed on May 27, 2022, Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2018, the last date insured. Tr. 897.

## IV. Plaintiff's Claims

### Whether the Light Jobs Identified by the VE Are Inconsistent with ALJ Dixon's RFC Assessment and Hypothetical Question.

Plaintiff argues that ALJ Dixon erred, and his decision was not supported by substantial evidence, because the VE's testimony and the

ALJ's decision failed to comply with SSR 24-3p and SSR 28-12. SSR 24-3p, which became effective prior to the February 2025 hearing, states:

> Some sources of occupational data use definitions of exertion level, skill level, and education level that align closely with our program rules. The DOT is such a source. If a VS or VE uses a source that defines exertion, skill, or education level differently than our program rules, we expect the VS or VE to acknowledge the difference and explain whether or how they have accounted for the difference.

SSR 24-3p, 2024 WL 4988840, at *97160 (S.S.A. Jan. 6, 2025). Under SSR 83-10, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (S.S.A. 1983). Plaintiff argues that the VE did not explain the contradiction between the hypothetical individual's ability to perform light work and the ALJ's RFC assessment limiting Plaintiff to four hours of standing or walking.

Plaintiff further argues that the ALJ limited the hypothetical person to jobs with the option to sit and stand at will. However, under SSR 83-12, "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS [or VE] should be consulted to clarify the implications for the occupational base." SSR 83-12, 1983 WL 31253, at *4 (S.S.A. 1983). Thus,

according to Plaintiff, ALJ Dixon failed to elicit testimony clarifying how a sit/stand option would affect the occupational base.[5]

**Whether ALJ Dixon Failed to Properly Consider and Discuss Plaintiff's Migraines and Their Impact on Plaintiff's RFC**

Plaintiff argues that on remand, ALJ Dixon failed to discuss the impact of Plaintiff's migraines on his RFC as previously ordered by the district court. In its prior order, this Court determined that ALJ Dixon's decision was not supported by substantial evidence based on his failure to discuss any limitations resulting from Plaintiff's migraines, which the ALJ found to be severe. Tr. 1029. In that order, the Court noted the ALJ "ignored medical records which specifically discussed the migraines and the successful and unsuccessful treatments" and failed to address Plaintiff's subjective complaints, including sensitivity to bright lights or debilitating days. Tr. 1032, 1039–40. The district court ordered the ALJ to properly determine Plaintiff's RFC and pose hypothetical questions including all of Plaintiff's impairments, including migraines, and the Appeals Council ordered the ALJ to take further action consistent with the Court's order. Tr. 1039–41. Even though ALJ Dixon again found Plaintiff's migraines to be a severe impairment, Plaintiff argues

[5] Plaintiff also argues Medical-Vocational Rule 201.14 directs a finding of disabled. However, that rule applies to an individual limited to sedentary work.

he failed to follow the Court's mandate to address the impact of Plaintiff's migraines on his RFC.

**Whether ALJ Dixon Failed to Address the Impact of Plaintiff's Right Shoulder Impairments, Tinnitus, and Hearing Loss on Plaintiff's RFC**

Plaintiff argues that ALJ Dixon's RFC assessment was inadequate because he failed to properly address Plaintiff's shoulder limitations, his tinnitus, and hearing loss. Plaintiff testified that he has functional limitations due to shoulder problems, including limited sweeping and mopping, and he could not hold his arm out in front of him for more than a few minutes. Tr. 948. He could only type for five minutes, then stop for thirty minutes before he could type another five minutes. Tr. 949–50. Plaintiff cites to medical records indicating a rotator cuff tear and degenerative changes of the acromioclavicular joint; shoulder abduction of 110 degrees, adduction 30 degrees, and forward elevation of 120 degrees with minimal scapular dyskinesia and reduced 4/5 strength in supraspinatus. Tr. 716, 796, 808. Despite this history, ALJ Dixon failed to determine whether Plaintiff's "shoulder problems" constituted a medically determinable or severe impairment and how it affected Plaintiff's RFC. Tr. 889–95.

Although ALJ Dixon's RFC assessment includes a limitation to reaching overhead for one-third of a workday and in all other directions for

six hours in an eight-hour day, Plaintiff argues ALJ Dixon failed to explain these limitations or determine whether Plaintiff's shoulder impairments are medically determinable or impacts Plaintiff's RFC.

Plaintiff further argues that while ALJ Dixon found Plaintiff's tinnitus is a severe impairment, the ALJ only stated that the VA gave Plaintiff 10 percent service-connected disability rating for tinnitus. He failed to discuss this impairment and its impact on Plaintiff's RFC.

Likewise, the record indicates Plaintiff suffers from mild to moderately severe hearing loss, and Plaintiff indicated he had a hard time hearing and understanding his wife. Tr. 240–41, 665, 802. Plaintiff's audiologist provided him with hearing aids, which he began using in 2016 and resulted in some improvement. Tr. 665. However, Plaintiff argues that ALJ Dixon failed to mention or provide analysis of Plaintiff's hearing loss, the extent of any improvement resulting from the hearing aids, and the effect of hearing loss on the Plaintiff's RFC.

**Whether the VE's Testimony about Job Numbers Failed to Provide Substantial Evidence to Support ALJ Dixon's Conclusion at Step 5.**

Plaintiff argues the VE's testimony did not provide substantial evidence for ALJ Dixon's conclusion because the DOT job descriptions of Router and Office Helper may be obsolete. According to Plaintiff, the job of Office Helper

in the DOT was last updated forty-four years ago in 1981. While the job description requires delivering oral and written messages, such messages are now delivered by email or telephone, rendering the VE's testimony obsolete in this respect.

Plaintiff also states that the DOT's description of the Router job was updated fifty years ago in 1977. The DOT describes a Router (clerical) as a worker who "[s]tamps, stencils, letters, or tags packages, boxes, or lots of merchandise to indicate delivery routes. Reads addresses on articles and determines route, using standard charts." DOT 222.587-038.[6] Plaintiff relies on Kelly P. v. Saul, No. 5:18-cv-00777-MAA, 2019 WL 3573591 (C.D. Cal. Aug. 6, 2019), where the court found "it is readily conceivable that technological advances in computers and cellular phones have led to the reduction, at least to a modest extent, in the number of router jobs that used to be performed with 'standard charts.'" Id. at *6. There, the court determined that "a reasonable mind would not accept the VE's testimony that there are a sufficient number of router jobs, as they are described in the DOT, in the national economy to constitute a significant number." Id. From this, Plaintiff

[6] U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed., rev. 1991), Clerical and Sales Occupations 219.362-050 to 243.367-018, https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT02B (last visited Aug. 31, 2026).

argues the VE's testimony offering obsolete jobs did not provide substantial evidence to support ALJ Dixon's decision.

Plaintiff further argues that the VE incorrectly testified there are 105,000 routing clerk jobs. Plaintiff states that this job belongs to the statistical group called Shipping, Receiving, and Inventory Clerks, which consists of 844,120 jobs. However, 92.8 percent of the jobs in this group are light work and require lifting twenty pounds or more, which exceeds ALJ Dixon's finding that Plaintiff was limited to lifting no more than ten pounds and standing or walking for more than four hours in an eight-hour day. Tr. 889. If 92.8 percent of the 844,120 jobs were outside of Plaintiff's RFC, then there would be only 60,777 jobs available to him.

Finally, Plaintiff argues that the job numbers provided by the VE are unreliable given his incorrect statement that all his data sources use the same definitions as the Social Security regulations. The VE stated that he primarily relied on Job Browser Pro by SkillTRAN, which uses the Bureau of Labor Statistics definition of full-time work as 35 hours or more per week. Tr. 968; https://www.skilltran.com/index.php/support-area/documentation/ft-pt (last visited Aug. 31, 2026).

Plaintiff contends SkillTRAN's definition conflicts with the definition of RFC under SSA rules and regulations: "Ordinarily, RFC is an assessment of

an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means eight hours a day, for five days a week, or an equivalent work schedule." SSR 96-8p(1), 1996 WL 374184, at *1 (S.S.A. July 2, 1996).

## V. Commissioner's Response

### Substantial Evidence Supports the Commissioner's Decision that Plaintiff was Not Disabled

The Commissioner argues generally that Plaintiff was unable to meet his burden of proving he was disabled on or before the expiration of his disability insured status on December 31, 2018. The Commissioner further argues substantial evidence supports ALJ Dixon's decision that Plaintiff was not disabled at any time from November 1, 2017, through December 31, 2018.

### ALJ Dixon Reasonably Considered Plaintiff's Migraines in Determining Plaintiff's RFC

The Commissioner contends that ALJ Dixon considered evidence of Plaintiff's migraines and discussed Plaintiff's testimony concerning his migraines. Tr. 890. ALJ Dixon acknowledged that VA records reflected a 100 percent service-connected disability rating, with thirty percent for migraine headaches. Tr. 308, 845, 850, 891, 895. For claims filed on or after March

27, 2017, agency adjudicators will consider the evidence underlying a decision by another agency but will not provide any analysis about a decision made by a different agency, such as the VA. 20 C.F.R. §§ 404.1504, 404.1520b(c)(1). According to the Commissioner, ALJ Dixon properly considered the decisions in the VA records.

ALJ Dixon recounted Plaintiff's testimony from the hearing:

> He has debilitating migraine headaches, with blurred vision, photophobia, phonophobia, and nausea. On average, he has two to three migraines per week. An average migraine lasts four to five hours. He takes a preventative medication and one at onset, which have been adjusted. He stops everything and goes to a dark and quiet place and uses a cold compress.

Tr. 890, 942–43, 946–48, 963. In both the hypothetical posed to the VE and ALJ Dixon's RFC determination, the ALJ properly considered additional limitations associated with Plaintiff's migraines, specifically, occasional exposure to hazards such as unprotected heights, heavy machinery, and environments of excessive noise, excessive noise, excessive brightness, and fumes. Tr. 889, 966.

**Plaintiff Failed to Prove Additional Limitations Based on a Right Shoulder Impairment, Tinnitus, and Hearing Loss**

Similarly, the Commissioner argues that ALJ Dixon's decision properly addressed Plaintiff's testimony and objective medical evidence regarding his right shoulder problems. In both the hypothetical posed to the VE and the

ALJ Dixon's RFC determination, ALJ Dixon properly considered additional limitations associated with Plaintiff's right shoulder impairment: "He can occasionally reach overhead but can frequently reach in other directions and can otherwise frequently handle, finger, and feel." Tr. 889, 966.

ALJ Dixon also discussed Plaintiff's testimony regarding his right shoulder problems. Tr. 890. ALJ Dixon noted that Plaintiff testified he was right-handed and had right shoulder problems. Tr. 890, 948–50. Plaintiff can sit and reach out with his hands to type on a keyboard for five minutes before stopping to take a 30-minute break. He can brush his teeth with his right hand for a few minutes, but he cannot pick up his grandson, throw a ball, or draw. Tr. 890, 950.

The Commissioner argues that the record shows that Plaintiff complained of right shoulder pain in September 2015, and Plaintiff reported that an MRI showed a torn rotator cuff and surgery was advised. Tr. 716. The Commissioner references an x-ray of Plaintiff's right shoulder taken on December 18, 2015, which showed the bones were well-aligned with no acute fracture, subluxation, or dislocation, and unremarkable soft tissues. Tr. 796. The Commissioner acknowledges the x-ray also showed a "decreased acromioclavicular joint space associate[d] with osteophyte of the adjacent bones," and the radiologist's impression was "[d]egenerative change of [the]

acromioclavicular joint." Tr. 796. The Commissioner argues, however, that this evidence predates Plaintiff's November 1, 2017, amended onset date, and the diagnosis did not establish work-related limitations.

The Commissioner further contends that the ALJ discussed physical examination reports indicating lower back tenderness in September 2017 and lower sacroiliac tenderness in September 2018, but the extremities showed "good radial pulses, no edema." Tr. 496, 556, 893–94. The ALJ accounted for Plaintiff's shoulder issues by adding postural limitations in his hypothetical to the VE and in his RFC assessment: Plaintiff could occasionally reach overhead and frequently reach in other directions, and could frequently handle, finger, and feel. Tr. 889.

With respect to Plaintiff's tinnitus and hearing loss, the Commissioner points out that ALJ Dixon found Plaintiff's tinnitus was a severe impairment, and ALJ Dixon noticed that beginning June 1, 2004, Plaintiff had a service-connected disability rating of ten percent due to tinnitus. Tr. 885, 891. ALJ Dixon also discussed a September 2017 examination indicating Plaintiff used hearing aids for his tinnitus and hearing loss. Tr. 894, 556. ALJ Dixon included an RFC limitation that Plaintiff could tolerate occasional exposure to hazards, including unprotected heights, heavy machinery, and environments of excessive noise. Tr. 889. The Commissioner contends that

Plaintiff has not demonstrated tinnitus or hearing loss warranted greater limitations. Tr. 889.

**Substantial Evidence Supports ALJ Dixon's finding that Plaintiff could perform a significant number of jobs in the national economy**

The Commissioner argues that ALJ Dixon reasonably relied on the VE's testimony, and substantial evidence supports ALJ Dixon's finding at step five. The parties agreed that Plaintiff cannot perform the full range of light work, and the VE identified occupations with reduced standing and walking demands of only four hours in an eight-hour day and the ability to sit or stand at will. Tr. 967–68. The Commissioner contends there is no conflict between light work and the jobs identified because agency regulations provide that light work may require minimal lifting but greater standing and walking demands, or light work may require greater lifting and less standing and walking. 20 C.F.R. § 404.1567(b).

The Commissioner further argues that ALJ Dixon appropriately called the VE under SSR 83-12, which applies "[w]here an individual's exertional RFC does not coincide with the definition of any one of the ranges of work . . . , the occupational base is affected and may or may not represent a significant number of jobs . . . ." 1983 WL 31253, at *2. Under this ruling, the ALJ "will consider the extent of any erosion of the occupational base and

assess its significance." Id. According to the Commissioner, ALJ Dixon did so by retaining the VE to testify about occupations that Plaintiff could still perform and whether those jobs existed in significant numbers.

## VI. Legal Analysis

### ALJ Dixon's Decision Was Not Supported by Substantial Evidence Because Light Jobs Were Inconsistent with the ALJ's RFC Assessment and Hypothetical Question.

Plaintiff first argues the VE's opinion that Plaintiff could perform light work conflicts with the ALJ's hypothetical question and RFC assessment. In particular, under SSR 83-10, light work requires the ability to lift twenty pounds and to stand and/or walk for approximately six hours in an eight-hour workday. 1983 WL 31251, at *97160 (S.S.A. 1983). However, the ALJ's hypothetical question and RFC assessment that Plaintiff was limited to four hours of standing or walking in an eight-hour workday. Tr. 896, 966. The Commissioner did not respond to this argument.

If an ALJ chooses to use a VE, the VE's opinion can only constitute substantial evidence to support an ALJ's decision that claimant can perform a proposed vocation when the hypothetical posed to the VE "comprises all of the claimant's impairments." Winschel, 631 F.3d 1176, 1180 (citing Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002)). Significant differences between the hypothetical posed to the VE and the RFC opinion rendered by

the ALJ would certainly undermine the existence of substantial evidence to support the ALJ's opinion.

SSR 24-3p provides:

> Some sources of occupational data use definitions of exertion level, skill level, and education level that align closely with our program rules. The DOT is such a source. If a VS or VE uses a source that defines exertion, skill, or education level differently than our program rules, we expect the VS or VE to acknowledge the difference and explain whether or how they have accounted for the difference.

2024 WL 4988840, at *97160 (S.S.A. Jan. 6, 2025). At the hearing, the VE testified that he primarily used SkillTRAN software to identify the positions of routing clerk, office helper, and router. Tr. 967–68. When ALJ Dixon asked the VE whether he used any data sources that define exertional, skill, or education levels different from Social Security regulations and the DOT, the VE responded, "No, Your Honor. All my data sources used the definitions that are defined by the agency regulations." Tr. 969. Thus, the VE identified jobs of light exertion using SkillTRAN, even though Plaintiff could not meet the standing and walking requirements of light work under Social Security rulings. The VE did not acknowledge or explain the inconsistency.

Additionally, ALJ Dixon limited Plaintiff to unskilled jobs that allowed for sitting or standing at will. Under SSR 83-12, "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.

In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base." SSR 83-12, 1983 WL 31253, at *4 (S.S.A. 1983). In this case, ALJ Dixon failed to elicit additional testimony from the VE to clarify the implications of a sit/stand option on the occupational base.

SSR 24-3p provides that, when the claimant is represented at the hearing, the representative is expected "to raise any relevant questions or challenges about the VE's testimony at the time of the hearing and to assist in developing the record through appropriate questions to the VE." 2024 WL 4988840, at *97160. However, it is the ALJ's responsibility to develop the record and to evaluate VE evidence in the context of the overall evidence. Id. Where, as in this case, the VE does not provide the information and explanation, the ALJ will usually need to develop the record further to make a supported finding at step four or five of the sequential evaluation process. Id. at *97161. Given the discrepancy between the VE's assessment that Plaintiff could perform light work and the Plaintiff's limitations for standing, walking, and a sit/stand option, the Court agrees with Plaintiff that the circumstances of this case warrant a remand for the ALJ to properly assess

whether the jobs listed by the VE were available to Plaintiff in significant numbers in the national economy.[7]

**ALJ Dixon's Decision Was Not Supported by Substantial Evidence Because He Failed to Discuss Medical Records Concerning Plaintiff's Migraines and the Impact of Migraines on Plaintiff's RFC.**

ALJ Dixon was required to consider the entire record—including, but not limited to, the medical records, the VA's decision, Plaintiff's statements, daily activities, frequency of the migraine pain, effectiveness of medications, and other factors. See 20 C.F.R. § 404.1529(c)(1), (3)(i–vii). "Remands are required when an ALJ fails to consider properly a claimant's condition despite evidence in the record of the diagnosis." Vega v. Comm'r of Soc. Sec., 265 F. 3d 1214, 1219 (11th Cir. 2001).

This Court previously determined that ALJ Dixon's decision of December 13, 2022, was insufficient and unsupported by substantial evidence in part because he failed to perform a function-by-function analysis concerning the effect of migraines and discuss or articulate any resulting

[7] Plaintiff also asserts that Medical-Vocational Rule 201.14 directs a finding of disabled if the individual is closely approaching advanced age (50 or older), is limited to sedentary work, has at least high school education, is unable to perform past relevant work, and has no transferable skills. *See* 20 C.F.R. Part 404, Subpt. P, App'x 2, § 201.00(g) and Table No. 1, Rule 201.14. This rule does not apply in this case, since Plaintiff is not limited to sedentary work.

limitations. See Case No. 5:23-cv-94-TKW-MAF, ECF No. 9, Tr. 1029. Even though ALJ Dixon found that Plaintiff's migraines were a severe impairment, "ALJ Dixon did not articulate how migraines significantly limit Shepherd's ability to perform basic activities or to work and did not reference any of the medical records that discussed the migraines and the successful and unsuccessful treatments." Tr. 1032.

On remand, ALJ Dixon again determined that Plaintiff's migraines are a severe impairment. Tr. 885. ALJ Dixon recounted in detail Plaintiff's testimony regarding each of his impairments and symptoms, including severe migraines. Tr. 890. ALJ Dixon acknowledged Plaintiff's testimony that he suffers from debilitating migraines, which occur two to three times per week and last for four to five hours on average. Tr. 890. ALJ Dixon did not discount this testimony but instead stated generally:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Tr. 890.

ALJ Dixon's RFC assessment and hypothetical questions to the VE included a limitation for "occasional exposure to hazards, such as

unprotected heights, heavy machinery, environments of excessive noise, excessive brightness, as well as fumes." Tr. 889, 966. Beyond this limitation, however, ALJ Dixon did not address Plaintiff's other subjective complaints, such as the frequency and duration of Plaintiff's migraines.[8] ALJ Dixon considered Plaintiff's VA disability rating of 100 percent and found it unpersuasive because the Commissioner must make a determination of disability based solely on Social Security law, regulations, and rules. Tr. 891, 895.

Additionally, without a listing for headaches, ALJ Dixon considered whether Plaintiff's headaches medically equal Listing 11.02 (Discognitive seizures), the listing most analogous to headaches. See Wright v. Comm'r of Soc. Sec., No. 24-11084, 2026 WL 1481204, at *2 (11th Cir. May 27, 2026). In determining whether a primary headache disorder is medically equivalent to epilepsy under Listing 11.02(B), the ALJ will consider medical sources' description of a typical headache, (1) all associated phenomena; (2) frequency of headache events; (3) adherence to prescribed treatment;

[8] At the hearing, ALJ Dixon asked the VE to consider an additional limitation for being off task at least fifteen percent of the workday or miss work at least twice a month on a consistent basis. Tr. 967–68. However, these additional limitations do not correlate with the frequency and duration of Plaintiff's migraines as testified by Plaintiff.

(4) side effects of treatment; and (5) limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day. Id. at *2–3 (internal quotation marks omitted); SSR 19-4p. Instead of addressing these factors, ALJ Dixon simply concluded that "the effects of headaches are not of the severity that invokes Listing 11.02." Tr. 886. ALJ Dixon's opinion does not contain sufficient information to conclude that the ALJ properly analyzed Plaintiff's migraines in accordance with Listing 11.02 and SSR 19-4p. See Wright, 2026 WL 1481204, at *3–4. Therefore, ALJ Dixon did not properly consider whether Plaintiff's migraines medically equaled a listed impairment at step three.

Moreover, ALJ Dixon again failed to address Plaintiff's medical history and treatment of headaches. As discussed previously, at a primary care appointment in September 2015, Dr. Robin Schlaudt noted Plaintiff had frequent headaches. Tr. 1030. In November 2015, Plaintiff presented to Dr. Siegrist for depression and complained he suffered from headaches "since he was in the military," and over time, his headaches increased in number and severity and occurred almost daily. Dr. Siegrist prescribed sertraline for depression. Initially, the frequency of his headaches dropped by at least fifty percent, but after an increase in his sertraline dosage, the headaches

became more frequent and severe. Tr. 1030–31. In April 2017, Plaintiff saw Dr. Wilburn E. Furniss complaining of allergy symptoms and headaches, and Dr. Furniss diagnosed Plaintiff with allergic rhinitis. Tr. 1031.

The Court also addressed the records of disability determinations services doctors, Dr. Phillip Matar, Dr. Arkin, and Dr. Grubbs, who were not Plaintiff's treating physicians and did not evaluate Plaintiff's migraines. Tr. 1032. The Court found that these administrative doctors and ALJ Dixon "ignored medical records which specifically discussed the migraines and the successful and unsuccessful treatments." Tr. 1032.

Despite the Court's specific references to Plaintiff's medical history, ALJ Dixon has again neglected to address these medical records and opinions concerning Plaintiff's migraines. As such, ALJ Dixon's RFC finding was not supported by substantial evidence. Given ALJ Dixon's failure to comply with the Court's prior order, remand is appropriate for the ALJ to address the medical records concerning Plaintiff's migraines and the impact of migraines on Plaintiff's ability to work.

## ALJ Dixon's Decision Was Not Supported by Substantial Evidence Because It Failed to Properly Address Plaintiff's Right Shoulder Impairment and Tinnitus

Plaintiff argues that ALJ Dixon failed to properly address Plaintiff's right shoulder impairment, failed to discuss the impact of tinnitus on Plaintiff's RFC, and failed to even reference Plaintiff's hearing loss.

With respect to Plaintiff's shoulder, ALJ Dixon recounted Plaintiff's testimony that he is right-handed and "has right shoulder problems." Plaintiff also testified that he has difficulty reaching out and can only type on a keyboard for five minutes at a time before needing a thirty-minute break. Tr. 890, 949–50. The medical record indicates Plaintiff suffered a rotator cuff tear and degenerative changes of acromioclavicular joint. Tr. 716, 796. Treatment records show shoulder abduction of 110 degrees, adduction of 30 degrees, and forward elevation of 120 degrees with minimal scapular dyskinesia as well as reduce 4/5 strength in supraspinatus. Tr. 808.

ALJ Dixon's RFC assessment included limitations that Plaintiff "can lift, carry, push, and pull ten pounds frequently and not more than 20 pounds occasionally . . . . He can occasionally reach overhead but can frequently reach in other directions and can otherwise frequently handle, finger, and feel. Tr. 889, 966. Despite these limitations, ALJ Dixon did not consider whether his shoulder problem was a medically determinable impairment and

how it impacted on Plaintiff's ability to perform work activities. ALJ Dixon did not cite to the medical record supporting these limitations or otherwise explain how Plaintiff's shoulder problems result in these limitations.

ALJ Dixon found that tinnitus was a severe impairment and acknowledged Plaintiff's testimony that he has ringing in his ears. Tr. 885. ALJ Dixon also noted that the VA rated Plaintiff's disability due to tinnitus at ten percent. Tr. 890, 894.

Plaintiff used hearing aids for his loss of hearing. See Tr. 240–41, 894. The record contains an audiological assessment from October 2015 indicating that Plaintiff "reports the onset of bilateral hearing loss during his time in the military; he did complain of tinnitus which is constant and sometimes sounds high pitched and other times sounds like static. Patient reports no pain today but did note that he sometimes has drainage. Patient has a hard time understanding his wife." Tr. 802. Testing resulted in a finding that Plaintiff suffered mild to moderately severe hearing loss in each ear. Tr. 802. The audiologist suggested that Plaintiff use hearing protection in hazardously loud noise and use tinnitus masking strategies when appropriate. Tr. 802. A hearing aid assessment in February 2016 indicated Plaintiff "responded well subjectively to sound quality of hearing aids; was

much easier to communicate after aids were fit/adjusted, responded well to counseling material presented." Tr. 665 (alterations omitted).

In ALJ Dixon's RFC assessment and hypothetical question to the VE, ALJ Dixon limited Plaintiff to occasional exposure to environments of excessive noise. Tr. 889, 966. It is unclear whether this limitation concerned Plaintiff's complaints of tinnitus and hearing loss. ALJ Dixon's decision does not even address Plaintiff's hearing loss. However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005); Buckwalter v. Acting Comm'r of Soc. Sec., 5 F.4th 1315, 1320 (11th Cir. 2021. Even though ALJ Dixon did not specifically address the audiologist's findings, the notes indicated that hearing aids sufficiently addressed Plaintiff's hearing loss. No other evidence in the record indicates that Plaintiff's hearing loss affected his ability to work. Therefore, while the case should be remanded for ALJ Dixon to consider and discuss the extent Plaintiff's right shoulder impairment and tinnitus impacted his RFC, no further discussion of Plaintiff's hearing loss by the ALJ is necessary.

**Substantial Evidence Supported ALJ Dixon's Conclusion at Step Five That Plaintiff Could Perform Other Work**

Plaintiff argues that the VE's testimony about job numbers was unreliable, did not comply with SSR 24-3p, and did not provide substantial evidence to support ALJ Dixon's conclusion that Plaintiff could perform the jobs of router and office helper.

At step five of the disability analysis, the ALJ must determine whether jobs exist in the national economy in significant numbers that the claimant could perform despite his impairments. See Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1360 (11th Cir. 2018)). The ALJ "does not tally the number of job openings at a given time, but rather approximates the number of positions that exist, whether vacant or filled, and without regard to the location of the work and a claimant's likelihood of being hired." Goode v. Comm'r of Soc. Sec., 966 F.3d 1277, 1281 (11th Cir. 2020). To identify the types of jobs a claimant can perform and to determine whether such jobs exist in significant numbers in the national economy, ALJs often seek guidance from VEs, who have expertise and current knowledge of working conditions and physical demands of various jobs, the existences and numbers of those jobs, and vocational placement of adult workers with disabilities. Biestek v. Berryhill, 587 U.S. 97, 100 (2019) (citations omitted);

see also 20 C.F.R. § 416.966(e). "In order for a [VE's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Edgecomb v. Comm'r of Soc. Sec., 841 F. App'x 142, 145 (11th Cir. 2020) (quoting Winschel, 631 F.3d at 1180).

SSR 24-3p requires VEs to "identify the sources of the data they use and, where applicable, to explain their general approach to estimating job numbers. If the . . . VE uses a data source that defines exertion, education, or skill levels differently than our regulations, we expect the . . . VE to explain the difference." 2024 WL 4988840, at * 97160 (S.S.A. Jan. 6, 2025).[9] The SSA recognizes that the DOT is not the only reliable source of occupational information. However, the DOT continues to be a reliable source that corresponds to many of SSA's rules and guidance, such as the classification of jobs as sedentary, light, medium, heavy, and very heavy, and SSA's skill levels of unskilled, semi-skilled, and skilled work correspond to DOT SVP levels of 1–2, 3–4, and 5 to 9. Id.

[9] SSR 24-3p rescinded SSR 00-04p, and ALJs are no longer required to identify and resolve conflicts between occupational information provided VEs and information in the DOT. SSR 24-3p, 2024 WL 4988840, at *97159.

Here, ALJ's RFC assessment and hypothetical posed to the VE assumed Plaintiff could "perform a reduced range of light work," including limitations for sitting between six to eight hours of an eight-hour workday; standing for no more than four hours in an eight-hour workday; walking for no more than four hours in an eight-hour workday; and an option to sit and stand at will. Tr. 889, 966. Considering these and other limitations, the VE opined that Plaintiff could perform the light, unskilled jobs of routing clerk, office helper, and router. Tr. 967. The VE testified that he primarily used SkillTRAN, Job Browser Pro version 1.7.5.1, which is based on surveys conducted by the U.S. Bureau of Labor Statistics. Tr. 968. The VE also testified, "All my data sources used the definitions that are defined by the agency regulations. " Tr. 969.

Plaintiff contends that the DOT descriptions are outdated and do not reflect technological advances that have changed the way jobs are performed. With respect to the office helper job, the description was last updated in 1981 and one of the job duties is delivering oral and written messages. DOT # 239.567-010.[10] According to Plaintiff, because messages

[10]U.S. Dep't of Labor, DOT (4th ed., rev. 1991), DOT # 239.567-010, https://www.dol.gov/ agencies/ oalj/PUBLIC/DOT/REFERENCES/DOT02B (last visited Aug. 31, 2026).

are now typically delivered by email or telephone, at least part of VE's testimony is obsolete.

The job of router was last updated in the DOT in 1977 and describes the duties as "[s]tamps, stencils, letters, or tags packages boxes, or lots of merchandise to indicate delivery routes. Reads addresses on articles and determines route, using standard charts." DOT # 222.587-038. Plaintiff argues this job description may also be obsolete. "[I]t is readily conceivable that technological advances in computers and cellular phones have led to the reduction, at least to a modest extent, in the number of router jobs that used to be performed with 'standard charts.'" *Kelly P. v. Saul*, No. 5:18-cv-00777-MAA, 2019 WL 3573591 (C.D. Cal. Aug. 6, 2019).

However, "[v]ocational experts may consult publications such as the DOT—even though it may be outdated." Hall v. Comm'r of Soc. Sec., No. 3:23-cv-1141-DNF, 2024 WL 3385452, at *5 (M.D. Fla. July 12, 2024); see also Ralph S.L. v. Comm'r, Soc. Sec. Admin., 2025 WL 3314023, *10 (N.D. Ga. Sept. 25, 2025) ("to the extent Plaintiff makes a general challenge to the DOT's job descriptions because they are out-of-date, the Court cannot find that this is a reason for reversal"). "Although the DOT is outdated—some would say obsolete—it remains one of the vocational expert's primary tools." Goode v. Comm'r of Soc. Sec., 966 F.3d 1277, 1281 (11th Cir. 2020); see

also Perez v. Comm'r, Soc. Sec. Admin., No. 24-10770, 2024 WL 5245256, at *3 n.3 (11th Cir. Dec. 30, 2024) ("Although it has been more than 25 years since the DOT was last updated, ALJs must continue to rely on the DOT while the Social Security Administration continues to develop its new system.")

Plaintiff further contends the VE's estimate that there are 105,000 routing clerk jobs in incorrect. According to Plaintiff, Job Browser Pro classifies the job as part of a statistical group called Shipping, Receiving, and Inventory Clerks, which consists of 844,120 jobs. Almost 92.8 percent of these jobs are light jobs requiring lifting twenty-five pounds or more. Thus, with the limitation that he can lift no more than twenty pounds, Plaintiff calculates that only 60,777 or fewer jobs exist for this job.

Plaintiff argues that the definition of full time work in Job Browser Pro conflicts with the SSA's definition of RFC. Job Browser Pro defines full time work as "35 or more hours per week," while the RFC reflects an individual's ability to do sustained work on a "regular and continuing basis." 20 C.F.R. §§ 404.1545(b)–(c). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). However, the Eleventh Circuit has recognized Job Browser Pro as an acceptable method for a VE to assess

job numbers. Goode v. Comm'r of Soc. Sec., 966 F.3d 1277, 1284 (11th Cir. 2020).

Under SSR 24-3p, "VEs may provide evidence based on their professional experience and any reliable source of occupational information that is commonly used in the vocational profession and relevant under our rules. . . . VEs are in the best position to determine the most appropriate sources of data to support the evidence they offer." 2024 WL 4988840, at *97160. At the hearing, the VE affirmed that his testimony would be based on his "knowledge, training, education, experience, personal surveys, contact with employers, contact with other [VEs], reviews of literature such as census reports, labor reports, accounting patterns, and be consistent with the [DOT] and any other companion materials that [he] utilize[s] on a routine basis." Tr. 964–65.

It is the ALJ—not the VE—who determines whether a specific number of jobs constitutes a significant number. See 20 C.F.R. § 404.1560(c). The ALJ must evaluate the VE testimony "within the overall evidence in the claim." SSR 24-3p, 2024 WL 4988840, at *97161. ALJ Dixon appropriately considered and accepted the VE's estimated job numbers under SSR 24-3p in concluding that Plaintiff could perform other work that exists in significant numbers in the national economy. Tr. 897–98.

Finally, Plaintiff's challenge to the VE's testimony is untimely. "At the hearing level, when the claimant is represented, . . . the representative [must] raise any relevant questions or challenges about the VE's testimony at the time of the hearing and to assist in developing the record through appropriate questions to the VE." SSR 24-3p, 2024 WL 4988840, at *97160. Raising relevant questions about or challenges to the VE's testimony at the time of the hearing, when the VE is ready and available to answer them, furthers the efficient, fair, and orderly conduct of the administrative decision-making process. Id. at *97160 n.10. As in this case, where a claimant does not present his own employment statistics before the ALJ or object to the VE's testimony, the court is foreclosed from considering the claimant's data presented for the first time on appeal. See Valdez v. Comm'r of Soc. Sec., 808 F. App'x 1005, 1010 (11th Cir. 2020) (per curiam).

At the hearing on February 18, 2025, Plaintiff was represented by attorney Thomas Furr. Tr. 929, Mr. Furr had no objection to John Black's qualifications to serve as the VE or to his testimony. Tr. 965. When given an opportunity to cross-examine the VE, Mr. Furr declined, stating that he was going to ask about Plaintiff being off task and her absenteeism, but the ALJ covered those topics. Tr. 969. Mr. Furr made no objections during the VE's testimony, nor did he submit additional vocational evidence or briefing to ALJ

Dixon post-hearing. Thus, ALJ Dixon was entitled to rely on VE testimony about the number of jobs available in the national economy. VE's testimony is the only evidence regarding the number of jobs available in the record, and nothing in the rest of the record conflicts with the VE's job number estimates. See Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998)

Accordingly, substantial evidence supports ALJ Dixon's conclusion that sufficient jobs existed in the national economy with the restrictions articulated in Plaintiff's RFC, so that Plaintiff was not disabled under the controlling law. There is no basis to remand on this issue.

## VII. Conclusion

Considering the record as a whole, the Commissioner's decision to deny Plaintiff's application for Social Security Disability Benefits is not entirely supported by substantial evidence in the record and premised on proper legal principles. 42 U.S.C. § 405(g); Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). Accordingly, this case is **REVERSED AND REMANDED**, and the Commissioner is ordered to REMAND this case to the ALJ for further proceedings consistent with this Order.

The Clerk is **DIRECTED** to enter judgment for the Plaintiff and close this file.

**DONE AND ORDERED** on August 31, 2026.

**s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**